Okay, we've got 15 minutes aside for Deming v. Ciox Health, and I believe it is Mr. Acossi who goes first. It's all yours. Thank you, Your Honor. May it please the Court. My name is Dominic Acossi, and I'm here on behalf of Plaintiff Appellants, who filed this action on behalf of a putative class against defendant Appellee Ciox and five Montana hospitals, alleging that they charged unreasonable amounts for providing medical records to their patients' attorneys. And before I get too far, I plan on reserving four minutes. I'll do my best to watch the clock. Thank you. Ultimately, the question before this Court is whether there's any remedy under Montana law when an entity charges as much as $902 to simply retrieve and email a copy of a patient's medical record to that patient's attorney. In July of 2020, the District Court held that there was not, and there are three causes of action which it held did not apply. I'll address each of those in turn. I'll focus you on the question that concerns me. I think if we were interpreting the, you know, Chapter 5 statute, which is not the one that applies here. Part 8 is the one that applies here. But if we looked at the Part 5, you would look at that and say that all of these obligations to disclose that are then accompanied by language that authorizes the collection of a reasonable fee as a condition of the disclosure, you would say that the authorization to charge the reasonable fee comes from those provisions and not from the CAC. So why wouldn't that very same interpretation carry over to Part 8? Part 8 only has one obligation to disclose. It's the subpoena context, and that has an authorization. So why would we read the CAC as being an authorization to impose a reasonable fee in other contexts that are not mentioned in the part and that were deliberately omitted when they copied from Part 5? Okay, Your Honor, I think that both Section 5 and, or Part 5 and Part 8, have the requirement of reasonable fees being charged in all instances, regardless of the process that is defined on how you produce that information. And the legislature, when it passed Section 816, stated that, in its section analysis of Section 816, that Montana statute governs the amount that a health care provider may charge for duplication and production of health care information. That's the first sentence. That's in the administrative, or the UR at 17. And what the legislature is recognizing there is that this is a separate statutory section. Both 540 and 816 are separate statutory sections that govern the amount that an entity may charge in all instances when it produces health care information. And that's regardless of whether that information is pursuant to one of the processes. But all the provision you're relying on here, 816 says, is that a reasonable fee for providing copies of health care information may not exceed certain amounts. But it doesn't say when you're authorized to collect the reasonable fee. So it's a cap on reasonable fees. But in Part 5, there is lots of provisions that authorize it. And most of them are omitted from here because they're governed by federal law. And where's the language in this that says that it's trying to cap fees that are authorized by federal law? Well, it only says that it's, it says that the first clause in the sentence says, unless prohibited by federal law, a reasonable fee shall only be, I'm sorry, go ahead. Isn't that just a recognition that the cap may conflict with federal provisions that may bear on the subject? Well, that is a recognition that the legislature does not intend to stop federal fees from applying. But it is also a broad statement and not a narrow statement that says pursuant to this section, or pursuant to this part, or pursuant to the compulsory process statute, it states that unless prohibited by federal law. And so this statute is not placed in the definition section. It is placed in its own section. And it dictates that a reasonable fee for providing copies of healthcare information may not exceed 50 cents for each page for a paper copy or photocopy. And it says a reasonable fee may include administrative fee that may not exceed $15 for searching and handling recorded healthcare information. So this statute is very specific and it is broad in its application when it is not limiting itself to a definition or to the application only to the sections in the rest of the part. It states what an entity may charge when it provides healthcare information. But just following up on Judge Collins' question, looking at Part V or Section V, I'm sorry I don't know the terminology, but I'm looking at Section 526, right, in Part V. It seems like that's the provision, tell me if I'm wrong, that that's the provision that we would have expected to see in Part VIII, kind of a general statement that a healthcare provider may charge a reasonable fee not to exceed, you know, as defined in the other section. And that's what seems to be missing just from a structural standpoint from Part VIII, right? We have a parallel definitional provision that's actually quite similar other than the addition of the unless prohibited by federal law that you've highlighted. But then in Part V, we've got a provision that actually says a healthcare provider may charge a reasonable fee and the implication is may only charge a reasonable fee. And then there's just nothing comparable in Part VIII. Is that – I think that's at least – that was the issue I had that seems similar to what Judge Collins was asking you about. I understand, Your Honor, and I think the context of Part VIII is important, and that is that the legislature said we want to take the burden of complying with HIPAA and this statute away from healthcare providers. And so in the introduction to Part VIII, they talk about the fact that what they're trying to do is take away these requirements about the authorizations, the dates, the identity, and they are saying HIPAA now addresses those issues. And we are going to leave in the state law those protections that we want our consumers to continue to have under state law. And so it doesn't have to have – when that process is defined by federal law, the legislature still intended and the language of that statute says, unless prohibited by federal law, for a blanket prohibition on unreasonable charges to apply. And they could have simply said in this Statute 816 that they're only subject to Section 812 or pursuant to this part, and they did not do that. This is – I'm sorry, go ahead, Your Honor. Off to one side of the discussion you've been having with Judge Collins and Judge Watford about the comparison between Part VIII and Part V and so on, all of which I must say I'm sympathetic to the questions that they asked. There's another question. Judge Malloy said this doesn't apply to electronic records in the first place. That is to say, this was enacted originally when the records were done on paper. This is now – these are now electronic. It doesn't apply, period. What's your response to that? Your Honor, I actually appreciate that question. I think it's very important. And I did not mention a couple things in my reply brief that, for instance, the HIPAA Title II, which governs electronic health records, was passed in 1996. So our legislature, when it went to change our statutes in response to HIPAA, was fully aware that electronic records existed and were becoming in existence. Well, if it was fully aware, why didn't it talk about electronic records instead of pages, which sounds very much like we're talking about paper, we're talking about faxes, we're talking about something other than electronic transmissions. Sure. So if you look at 816, they say twice, they say health care information. So I'll go to the second sentence, which I think is applicable to what we're talking about. It says a reasonable fee may include an administrative fee that may not exceed $15 for searching and handling recorded health care information. The legislature actually defined the term health care information in Section 803. And if you go to that definition, health care information is defined as it means any information, whether oral or recorded, in any form or medium. So under the definition in this part, when the legislature says that a reasonable fee may include an administrative fee that may not exceed $15 for searching and handling recorded health care information, it is saying recorded health care information in any form or medium. So it actually does expressly incorporate electronic health care information, as well as any other information into the statute. There's another point that Judge Malloy makes, and I'll preface my question in the following way. Often you can persuade a court to push a little bit, maybe even sometimes even push a lot on language, in order to get to a sensible result to accomplish something that seems reasonable, maybe the legislature intended to accomplish or thought about would have intended to accomplish. But in a way this is a non-problem, because as Judge Malloy points out, that if the request had been made by the patient to send the document, to electronically send the information to the patient himself or herself, that's regulated by the HITECH. So in a way it's not really a problem. All you've got to do is just request that it be sent to the patient rather than sent to the lawyer. What's your response? My response to that is actually the practicalities of pursuing these claims on behalf of people frequently dictate that the attorney is the one who provides the authorization and requests the records. Two of the claimants in this case had head injuries. And none of this is developed in discovery, and we could do that if it was there, but frequently when you ask your client and give them a letter to ask for medical records, they aren't provided with the full file. And then you have to go back and do it anyway. And as I mentioned in my briefing, in Montana you have to, or third-party insurers have to pay for medical bills as they're encouraged. So when we're handling these claims for people, we're not doing it in terms of just pursuing a lawsuit. We're doing it for each one of these clients. There wasn't a lawsuit filed yet. We were doing it to help make sure that their medical bills were paid. So in order to get these records and make sure that we get all of them so that we can tell an insurance company they have all of them, we frequently have to be the ones to do that. And we have tried to do it otherwise, and it just did not work. So you're saying as a practical matter, oftentimes having the patient do it himself or herself just doesn't work out very well. That's correct, Your Honor. I am past the time I had hoped to reserve. Is there anything specifically that the court would like me to address? Let's do it this way. Let's hear from the other side, and then we'll make sure you get an ample opportunity to respond. Thank you. Thank you, Your Honor. Jay Lefkowitz, arguing on behalf of the appellees. I think the district court properly dismissed the case because all of the plaintiff's allegations rest on the misreading of Section 5016.816 that Judge Collins and Judge Watford identified. They're trying to impose a freestanding requirement to charge nothing for electronic records for third parties. It seems like what this statute is presuming is that they're retreating or withdrawing from this area because it's governed by federal law. But you're telling us that federal law, although it imposed obligations of disclosure, you found a loophole in federal law where you're outside of the fee caps in federal law. And now, you know, you're claiming that the state statute doesn't apply either. So there's a federal disclosure obligation, and you can charge whatever you want, and you've managed to evade both statutes and regulations. Is that your position? Not exactly, Your Honor. Federal law does speak directly to this issue of a third-party request. Let me stop you there because I don't see how it's a third-party request because the letter comes from the law firm, but it attaches a request, a patient directive from the patient. So I'm looking at one from Breonna Fraser, and she signs it. And she says, I would like the copy, and I want it sent to my lawyers. Why is that a first-party request? Your Honor, because the HHS regulations, and I'll give you the citations, 65 Federal Register 82462 and 82754, made very clear long before Montana changed its rule from Part V to Part VIII, and the timing is critical, but made it clear that what was relevant for purposes of either being within the fee regulation or being outside the fee regulation was not who was requesting the document, but to whom the document goes. Well, that's not actually what the fee regulation says. It says if the individual requests a copy of the protected health information, the covered entity may impose a reasonable cost-based fee, and then that fee is then regulated under the further provisions. And there's another provision that says if the individual's request for access can direct the covered entity to transmit it. So it's still an individual request, and the fee is triggered by the individual request. Your Honor, okay, so let me, if I may, let me break this down. Part VIII is the second-generation regulation here, and I think as the Court identified, Part V had a broad provision that said a health care provider may charge a reasonable fee not to exceed the fee provided in 540. And then in 2003, after the federal government had started to impose fee requirements, and I'll return to that in a minute, Montana's legislature came and said, we actually, and this is in the statute at 801 paren 3, says the applicability of Part V relating to health care privacy is unnecessary, and we're going to adopt new statutory provisions. And there, there's only one area where they chose to impose this reasonable fee, and that has to do with compulsory process. Now, they were well aware of what they were relieving because they said we're relieving the duties and the obligations under Part V. Now, at the time that they did that, they knew that there were a lot of entities that were HIPAA compliant, like hospitals and record providers, and they knew that those entities had to comply with the new federal regime. And the new federal regime that existed at that time did not impose a fee cap with respect to requests that were sent, but even if they were requested by the patient, if they were sent to a third party, if they were sent to the patient, then they were subject to this fee regulation. And I think what the Montana legislature was doing was recognizing now that there was this very robust federal regime. They were saying we no longer have to have all of these different provisions under Part V that point you to the reasonable fee language and what the reasonable fee is, the 50 cents under 540. Instead, under Part VIII, we're still going to have a definition of what is a reasonable fee, but we are only going to apply that in this one situation of compulsory process only for HIPAA-compliant entities. For other entities, there are other obligations still intact, and those are the five obligations. So I think this was a very deliberate choice by the Montana legislature, and they say it as much in the statute in the first provision, the legislative findings, which are part of the statute. And in fact, there are provisions of Montana law, even with respect, for example, to the subpoenas, that are more restrictive, more protective, if you will, than under federal law. And under the way the HIPAA reverse preemption works, the state is allowed to do that. So if the Montana legislature went back now and imposed a more restrictive regime, nothing would prevent that from being the applicable law that guided people. But I think what Montana did here very, very clearly in 2003 was relieve the burden for HIPAA-compliant entities, like SIOCs and like the hospitals here, from complying with all of these other reasonable fee requirements and limit it just to the compulsory process. Now, I just want to touch briefly on Judge Fletcher's point about the application to electronic records. The Montana legislature knows clearly how to delineate and regulate electronic records. At the Montana Code, Section 7-5-2131, it regulates electronic records with respect to county government electronic records, and it says it very clearly. The language, the plain language of 816 talks about searching and handling, which is clearly, I believe, intended to address paper and not electronic records. Searching can be electronic. Sure, but handling is obviously paper records. And I think that, again, I don't think this applies at all. That's not clear at all because, you know, we talk about shipping and handling, and, you know, here you charged handling fees for electronic deliveries, didn't you? We did charge, yes, we did, Your Honor. We did charge that. And did you call it handling? I'm looking at one of the invoices right now. We charged it, we called it a paper copy and an electronic data archive fee and a retrieval fee. But, Your Honor, I think the more important point here is that 816 is simply a definitional section and it's clear that if 816 covered every consequential situation in the same way that 540, they're arguing, did, then none of these other provisions, either the ones in Part V that no longer apply to HIPAA-compliant entities or the subpoena limitation that is in Part VIII would be relevant because you would simply have this catch-all that applies across the board and then the legislature would not have achieved its very clearly stated objective of limiting and relieving the Part V obligations to HIPAA-compliant entities. Is it your position that because Part VIII doesn't limit the fees that you're simply not limited in any way? So you could charge, you know, $5,000 for sending these things? Your Honor, I don't know, frankly, if the legislature has addressed in any other context, you know, outer bounds. I know that there is certainly, if you look at the list of, for example, MCPA consumer protection, there's a statute in Montana, 23.19101, that talks about what constitutes violations of Consumer Protection Act and they all relate to misleading, bait-and-switch. If I, for example, say I'm charging you for 100 pages, but I only deliver five pages, but I don't believe that there's actually a statute in Montana now that sets any upper limit for records retrieval. Obviously, there's a free market. The answer to Judge Fletcher's question whether you could charge $5,000 is yes. I think the answer probably, Your Honor, is yes, if the market could bear it. I doubt the market could bear that because it's a very competitive marketplace for records providers. So I don't think the market could do that. And in any event, as Judge Fletcher pointed out, any individual who wants a record from a hospital is entitled to get it at a maximum of $6.50 if the request is simply, please send the documents to me. What goes on here is we have a situation where lawyers are making requests for any number of reasons. Sometimes they're making requests because they want to evaluate a potential case before they take it and they actually don't want to get the records filtered through the individual. They want to actually get the records directly so they can make sure that they have access to the entire health care file. And that is a different situation. So the request comes from the individual. If the individual says email it to me, $6.50, if the individual says email it to my lawyer, which is what happened here, then you can charge $900. That is, in fact, the way the federal regulations are applied. That's as explicit as can be in the federal regulations right now. And, in fact, most recently, about a year ago, in a D.D. District of Columbia federal court case called Syox versus Azar, that proposition was tested and it was confirmed by the court. Again, nothing prevents further regulation legislation in this area. We're simply looking at whether Montana has decided to impose a more restrictive obligation than federal law. And what they say very clearly in 2003, and they have not thought to update that since then, is there is no restriction that requires the charging of no more than a reasonable fee, as we've defined it, except in the circumstance of compulsory process. Is there anything that would prevent Montana, if we were to agree with you under the current state of Montana law, is there anything that would prevent Montana from passing a statute that your adversary contends has already been passed? Are we talking preemption? Is there any obstacle to Montana passing a statute that would limit the fees that you could charge? None whatsoever. Lots of states have provisions like that. The federal preemption regime, with respect to HIPAA, makes very clear that the secretary can allow states to have more restrictive rules and fee caps and the like, and the secretary has promulgated a regulation making clear that states are free to do that. So there is nothing that would stand in the way of the Montana legislature from passing almost any type of statute with respect to fee limitations. Can I ask you one last question? You referenced that decision last year from the District of Columbia District Court. Is it possible that when the Montana legislature enacted Section 8 and withdrew essentially from the field of HIPAA-covered entities, that it thought that federal law did, in fact, cover both the kinds of requests that federal law covered, where it's sent directly to the patient and the? Correct. No? No, and the reason is that it was not until 2016 when HHS tried to, through an FAQ, as opposed to going through any kind of regulatory process, they went and simply posted on a HHS website that the $6.50 requirement would extend not nearly to requests that were sent to patients, but requests that patients earmarked for their attorneys, and that was what we challenged in that case. But that took place in 2016. What is more relevant is that in 2003, when Montana did pass this law, they passed the law against the backdrop of HHS regulations that made very clear that there was, in fact, a distinction. There would be regulation and fee limitation if I asked to have the records sent to me. There will not be if I ask to have this record sent to me. The last point I'll make, simply because I'm out of time, is I think Judge Malloy was correct that both the implied covenant claims and the MCPA claims are entirely derivative of the statutory claim. I know I've run out of time, so I expect I'll get some rebuttal on this point. All I'll say is if you look at the complaint itself, nowhere in the text of the complaint do they allege misconduct that goes beyond simply having a fee that is in violation of the law. Therefore, I think all of these claims are, the other claims are simply parasitic of the pure statutory claim. If you rule with us on the statutory claim, I think the case is over. This is already their third complaint, and when we did point out some of these problems with the implied covenant and the MCPA, they never showed Judge Malloy what they would plead if they were trying to amend. So I think he was correct in finding that it is futile. Okay, thank you. Mr. Cossey. Thank you, Your Honor. Thank you. Let's put two minutes on the clock for Mr. Cossey. Thank you, Your Honor. I will try to go very fast. First off, while you were all talking to Mr. Lefkowitz, you mentioned a couple times that the statute wasn't clear. And when the statute isn't clear, you look towards the intention of the legislature. And what the legislature said about 816, which makes it clear that it intended to regulate this in all situations, is that federal privacy rules limit the circumstances under which a fee may be charged. In circumstances where federal rules don't apply, current state standards remain in place. The legislature intended 816 to apply to all productions of medical records. Health care information in the second sentence of 816 is defined as health care information in all forms and media. So it applies to this situation. I need to move. I'm sorry. If this is what they wanted to do, why pass Part 8 at all? If you just left Part 5 in place, it would have done the same thing, wouldn't it? Because all the disclosure obligations in Part 5 just mirror what HIPAA imposes. And so the only thing that would be different would be the fee cap. And so that's what I don't understand. If that's true, just leave Part 5 in place. So, Your Honor, HIPAA would change through the regulations, and Part 5 would have to be changed when there is a meeting of the legislature. And so that's biannual in Montana. So they would have to every two years look and see what changed with HIPAA and come back to Part 5. So when they said in part, and then this also goes against his argument. Part 5 has a collection of disclosure obligations, and then it has a fee cap. It has authorization for a reasonable fee and then a fee cap. And so the HIPAA disclosure obligations are not changing left and right. I mean, and so, but your point is that the cap is meant to apply. But I don't understand why they do a Part 8 at all. If they just leave Part 5, it would layer on top of HIPAA, and the only non-redundant part is the cap. Exactly. That's exactly right, Your Honor. So they didn't want to, they wanted to take off the burdensome health care privacy rules that were in Part 5 and leave in restrictions that help Montana consumers, one of which is a cap. And the other one is a subpoena. And subpoenas are pretty particular to state law, so it makes sense why we would have a process for subpoenas. All throughout Part 5, they're just making sure that it's clear throughout each of these processes that the reasonable fee statute applies for the hospitals. But they're never saying that that's the only circumstances in which that applies. And I'm sorry, I also wanted to say as to the Montana Consumer Protection Act, in my briefing, I discussed extensively how if state law makes it clear that it wants something to be unfair, that it intends for there to be an unfair practice under Rohwer v. Knutson, then that can be unfair under state law. And the defendant has asserted that I weighed that issue, and he said he gave us an opportunity to change that. The only reason we amended this complaint, and I worked with local counsel on this, so I don't know how he would know this issue, but the only, when we amended our complaint, we told defendants that we were doing it in order to match the names of the hospitals to their correct names. We had some of those wrongs. So when we amended our complaint, that's what we did. And I'll rest on my arguments regarding waiver on the Montana Consumer Protection Act claims, but if you have any questions for me on those, I want to make sure I gave you the opportunity to grill me on it since. Sure, sure. Any questions from the bench on that question, on that issue? Okay. Any final summation you'd like to make before we quit? Mr. Cossey. No, Your Honor. I believe that 816 applies, and that if it does not, the Consumer Protection Act steps in to provide that, and we should be given an opportunity to amend. Thank you. Thank you. Thank both sides for your helpful arguments. Deming v. Cyox Health submitted for decision, and that concludes our argument for this morning. Thank you very much. We're now in adjournment. Thank you. All rise. This Court, for this session, stands adjourned.
judges: W. Fletcher, Watford, Collins